Charles C. POWELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 55A01–0502–CR–55.

Court of Appeals of Indiana.

Feb. 6, 2006.

Gregory T. Lauer, Lauer and Lauer, Martinsville, for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Charles Powell, brings this interlocutory appeal challenging the trial court's denial of his motion to suppress. Upon appeal, Powell presents one issue for our review: whether an anonymous caller's tip established the reasonable suspicion necessary to justify an investigatory stop under the Fourth Amendment of the United States Constitution.[1]

We reverse.

At approximately 11:28 p.m. on May 14, 2004, Martinsville Police Officer Gary Wagner was dispatched to a CVS/pharmacy ("CVS") in Martinsville upon a report of a possible intoxicated person in the area. The dispatch informed Officer Wagner that the suspect was staggering inside the store and that the suspect had gotten into a red Dodge SUV with an Indiana truck license plate, number 722774A. When Officer Wagner arrived at the CVS, he observed a red SUV, but then determined that the license plate did not match that given in the dispatch. Officer Wagner then observed a second red SUV begin backing out of a parking space on the west side of the CVS store. This SUV matched the description in the dispatch. Officer Wagner pulled behind the vehicle, stopping his car about ten feet behind and perpendicular to it.

As Officer Wagner got out of his car, he observed that the backup and brake lights were illuminated, indicating that the vehicle was in reverse. The driver of the

---

1. Powell makes no argument under Article 1, Section 11 of the Indiana Constitution.

vehicle, later identified as Powell, never put the car in park. Officer Wagner then approached the driver's side door and noticed that Powell was staring into the driver's door mirror. Powell never acknowledged Officer Wagner's presence, so Officer Wagner then tapped on the window. Powell slowly rolled down the window while staring at Officer Wagner. Powell then started rocking back and forth in his seat. While explaining that he was investigating a complaint, Officer Wagner observed a strong odor of an alcoholic beverage coming out of the vehicle and from Powell's breath. After Powell voluntarily submitted to a portable breath test, several field sobriety tests, and a certified chemical test, Officer Wagner determined that Powell was intoxicated and placed him under arrest.

On May 17, 2004, the State charged Powell with operating a vehicle after being adjudged an habitual traffic offender, a Class D felony, operating a vehicle while intoxicated as a Class D felony, and operating a vehicle with a BAC of .15 or more as a Class D felony. After a hearing on November 30, 2004, the trial court denied Powell's motion to suppress. On December 28, 2004, Powell filed a petition to certify the order for interlocutory appeal, which the trial court granted on January 3, 2005. This court accepted Powell's petition for interlocutory appeal on March 15, 2005.

■ We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Scott v. State*, 803 N.E.2d 1231, 1234 (Ind.Ct.App.2004). In reviewing a motion to suppress ruling, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider uncontested evidence favorable to the defendant. *Id.* We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Id.*

■ We begin by noting that Officer Wagner admitted that he did not observe Powell commit any traffic violation prior to pulling up behind Powell's vehicle and that he made the stop based solely upon the call received by dispatch. Powell's argument upon appeal is that the anonymous tip received by dispatch did not provide reasonable suspicion to stop his vehicle. Powell asserts that there was no showing that the caller was reliable or that the caller's identity was verified prior to the stop. Powell further asserts that the information which Officer Wagner corroborated, i.e. the color and make of the vehicle and its license plate number, was readily available to anyone in the general public and was not predictive of future behavior.

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Francis v. State*, 764 N.E.2d 641, 644 (Ind.Ct. App.2002). Police officers, however, may briefly detain a person for investigatory purposes if they have a reasonable suspicion that criminal activity may be afoot. *Id.; Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion exists "where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur." *Francis*, 764 N.E.2d at 644. In deciding whether there was reasonable suspicion for a stop, we look at the totality of the circumstances of a given case. *Id.* The reasonable suspicion inquiry is fact-sensitive and is thus determined on a case-by-case basis. *Id.* We review a trial

court's determination regarding reasonable suspicion de novo. *Id.*

 Though we have before held that an anonymous or unidentified informant can supply information that gives police reasonable suspicion, the general rule is that an anonymous tip is not likely to constitute the reasonable suspicion necessary for a valid Terry stop unless "significant aspects" of the tip are corroborated by the police. *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997), *modified upon rehearing on other grounds; Francis,* 764 N.E.2d at 645. Stated somewhat differently, "an anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a *Terry* stop and the attendant interruption of liberty required to accomplish it." *Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *trans. denied.*

In *State v. Glass,* 769 N.E.2d 639 (Ind. Ct.App.2002), *trans. denied,* a police officer received a dispatch advising of a "suspicious vehicle for reckless driving." The officer stated that dispatch knew the identity of the caller and relayed to the officer the description of the vehicle to be on the lookout for. The officer found the described vehicle and followed it for approximately one block, but witnessed no traffic violations or inappropriate driving. Nevertheless, the officer activated his emergency lights and initiated a traffic stop.

Upon appeal, the *Glass* court addressed whether the caller's tip was sufficient to establish reasonable suspicion justifying the stop of Glass's vehicle. The court noted that while dispatch knew the name of the caller, the caller's identity was never verified. 769 N.E.2d at 643. Thus, at the time of the stop, the officer "did not know whether the caller was a concerned citizen, a prankster, or an imposter." *Id.* The record did not establish that the caller identified himself in such a way as to place his credibility at risk or as to subject himself to criminal penalties. *Id.* The court continued, noting that the officer did not confirm the "reckless driving" aspect of the caller's tip. *Id.* The court noted, however, that from the record before it there was some question as to what precise information was corroborated by the police officer. *Id.* at 643–44. Nevertheless, the court concluded that the officer did not have reasonable suspicion justifying the stop of Glass's vehicle based solely upon the caller's tip. *Id.* at 644.

We likewise conclude that the tip received in this case did not establish reasonable suspicion justifying the stop of Powell's vehicle.[2] We agree with Powell

---

**2.** Citing *State v. Springmier,* 559 N.E.2d 319 (Ind.Ct.App.1990), the State argues that the caller in this case was a "concerned citizen" and thus should be considered reliable. In *Washington, supra,* the court acknowledged the *Springmier* decision, stating:

"[S]ome of our recent decisions could be interpreted to reflect a divergence between the Indiana and federal case law with respect to the question whether an anonymous tip, without more, can provide police with reasonable suspicion that criminal activity might be afoot. *See, e.g., Springmier,* where we found the police had reasonable

suspicion the defendant may have been committing a crime based on a call from a 'concerned citizen' to the police dispatcher. 559 N.E.2d at 320. That decision does not reflect whether the officer observed any activity that would support a traffic stop, nor did it indicate whether the police had any evidence of the caller's reliability. The *Springmier* decision did indicate the suspicion was based on 'specific and articulable facts,' *id.* at 321, but did not indicate what those facts were or whether the caller offered the dispatcher any facts other than the description of the car and the direction

that the call from the CVS which was received by dispatch was an anonymous tip. There is nothing in the record which indicates that prior to the stop, either dispatch or Officer Wagner verified the caller's identity. To be sure, the record does not reveal that the caller even identified him/herself. Thus, as in *Glass,* at the time of the stop, Officer Wagner "did not know whether the caller was a concerned citizen, a prankster, or an imposter." *See Glass,* 769 N.E.2d at 643. Further, although the caller stated that Powell was staggering and provided a description of Powell's vehicle, complete with license plate number, the caller provided no information regarding his/her basis of knowledge. As for corroboration of the caller's tip, Officer Wagner confirmed only the description of the vehicle and the license plate number prior to pulling behind Powell's vehicle to initiate a stop. Such corroborated information was not predictive of Powell's future behavior and did not show that Powell had engaged in or was about to engage in criminal activity; rather, the information which was confirmed was easily obtained and readily available to anyone in the general public. There was simply no corroboration prior to the stop which established that the caller's tip was reliable in its implication of illegality. The State did not establish that Officer Wagner had an objective and articulable suspicion that Powell had committed, was committing, or was about to commit legal wrongdoing. We therefore conclude that the tip did not contain the requisite indicia of reliability to provide reasonable suspicion to stop Powell's vehicle. *See also Berry v. State,* 766 N.E.2d 805 (Ind.Ct.App.2002), *trans. denied.* Therefore, the trial court should have granted Powell's motion to suppress

the evidence obtained following the stop, including evidence of Powell's intoxication and his status as an habitual offender.

We acknowledge the State's argument that there is a strong public interest in keeping intoxicated persons from driving, and our decision today is not intended to discourage citizens from reporting suspected intoxicated drivers. However, in such situations, the State's response must comply with the dictates of the Fourth Amendment. *See Glass,* 769 N.E.2d at 644.

The ruling of the trial court is reversed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

of travel. To the extent *Springmier* may be interpreted to allow a *Terry* stop based on nothing more than an anonymous telephone call reporting a vehicle's location

and direction of travel, we decline to follow it." *Washington,* 740 N.E.2d at 1246 n. 5. We agree with the *Washington* court and also decline to follow the *Springmier* decision.