**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 12 2012, 9:12 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HUGH N. TAYLOR**
Hugh N. Taylor, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL J. MAURER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1112-CR-552 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE DeKALB SUPERIOR COURT
The Honorable Kevin P. Wallace, Judge
Cause No. 17D01-1107-FD-114

**June 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Michael J. Maurer brings this interlocutory appeal, claiming that the trial court abused its discretion in denying his motion to suppress. Maurer argues that the evidence stemming from the investigatory traffic stop should be suppressed because the investigating officer lacked reasonable suspicion to initiate the traffic stop. Concluding that the investigating officer had reasonable suspicion to stop Maurer's vehicle, we affirm the trial court's order denying Maurer's motion to suppress.

**FACTS AND PROCEDURAL HISTORY**

Because this is an interlocutory appeal, the facts have not yet been established through a trial. The alleged facts as presented during the suppression hearing are as follows: During the late afternoon or evening hours on July 4, 2011, DeKalb County Sheriff's Department Sergeant Michael Keesler received communication from dispatch that two unrelated identified concerned citizens had reported that a blue, grey, or silver Honda Accord was "traveling all over the roadway" near the 134-mile marker of southbound I-69. Supp. Hr. Tr. p. 5. Sergeant Keesler positioned himself near the 129-southbound exit ramp at State Road 8 in DeKalb County. Sergeant Keesler observed a Honda Accord matching the description given by dispatch exit the interstate on the 129-southbound exit ramp. The vehicle was traveling "pretty fast" and "abruptly stopped because there was a vehicle settin' at the intersection at the red light." Supp. Hr. Tr. p. 7. Once the light turned green, the vehicle that was stopped in front of the Honda Accord proceeded through the intersection. The Honda Accord, however, "sat there for awhile, up until a yellow light. And then decided to turn right." Supp. Hr. Tr. p. 7. As the Honda Accord turned, the vehicle made a wide-right turn

2

and crossed the yellow line. Based on the information received from dispatch and his observations, Sergeant Keesler activated his emergency lights and initiated a traffic stop.

On July 8, 2011, the State charged Maurer, by information, with Class A misdemeanor operating a vehicle while intoxicated, Class A misdemeanor operating a vehicle with an unlawful alcohol concentration in blood or breath, and Class D felony operating a vehicle while intoxicated or with an unlawful alcohol concentration in blood or breath while having a previous conviction. On September 6, 2011, Maurer filed a motion to suppress all evidence obtained as a result of the traffic stop. Following a hearing, the trial court denied Maurer's motion on October 19, 2011. At Maurer's request, the trial court certified its October 19, 2011 order for interlocutory appeal. On January 20, 2012, this court issued an order accepting jurisdiction over the interlocutory appeal.

## DISCUSSION AND DECISION

Maurer contends that the trial court abused its discretion in denying his motion to suppress certain evidence at trial because Sergeant Keesler lacked reasonable suspicion to initiate the traffic stop.

> We review the denial of a motion to suppress in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant.

*Bentley v. State*, 779 N.E.2d 70, 73 (Ind. Ct. App. 2002) (citations omitted). "Although we generally review a trial court's decision to admit evidence despite a motion to suppress under

3

an abuse-of-discretion standard, the ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed *de novo*." *Crabtree v. State*, 762 N.E.2d 241, 244 (Ind. Ct. App. 2002).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Burkes v. State*, 842 N.E.2d 426, 429 (Ind. Ct. App. 2006), *trans. denied*.

> The Fourth Amendment regulates nonconsensual encounters between citizens and law enforcement officials and does not deal with situations in which a person voluntarily interacts with a police officer. A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. A brief investigative stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003) Thus, "[b]ecause a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

Reasonable suspicion exists where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Burkes*, 842 N.E.2d at 429-30. In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances of a given case. *Id.* at 430. "An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred." *Meredith*, 906 N.E.2d at 870.

> Police officers may stop a vehicle when they observe minor traffic violations. *Smith v. State*, 713 N.E.2d 338, 342 (Ind. Ct. App. 1999), *trans. denied*; *see also* Ind.Code § 34-28-5-3. A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. *Ransom v. State*, 741 N.E.2d 419, 421 (Ind. Ct. App. 2000), *trans. denied*. If there is an objectively justifiable reason for the stop, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. *Smith*, 713 N.E.2d at 342.

*Jackson v. State*, 785 N.E.2d 615, 619 (Ind. Ct. App. 2003).

In the instant matter, the record demonstrates that Sergeant Keesler observed Maurer make a wide turn and cross the yellow line dividing lanes of traffic. Sergeant Keesler initiated that traffic stop and ticketed Maurer for driving left of center in violation of Indiana Code section 9-21-8-2. Maurer argues that Sergeant Kessler mistakenly believed that he committed a traffic infraction by crossing the yellow dividing line because the law is ambiguous as to whether that action constitutes a traffic violation. For its part, the State argues that Maurer clearly committed a traffic violation, and, as such, the traffic stop was valid. *See id*. However, we need not determine whether Maurer's actions constituted a traffic violation because we conclude that Sergeant Keesler had reasonable suspicion to conduct an investigatory stop of Maurer's vehicle.

It is well-established in Indiana that a tip from a concerned citizen may be sufficiently reliable to justify an investigatory stop. *See State v. Renzulli*, 958 N.E.2d 1143, 1147-48 (Ind. 2011); *State v. Smith*, 638 N.E.2d 1353, 1355-56 (Ind. Ct. App. 1994); *State v. Springmier*, 559 N.E.2d 319, 320-21 (Ind. Ct. App. 1990). In *Renzulli*, a concerned citizen contacted the police regarding a driver who was driving erratically. *Renzulli*, 958 N.E.2d at

1148. The concerned citizen provided the color and make of the vehicle at the location the police arrived, at a time of night with minimal vehicular traffic. *Id.* The Indiana Supreme Court held that the concerned citizen's tip provided enough independent reliability to justify the stop of Renzulli's vehicle. *Id.*

In *Smith*, various truck drivers contacted police identifying a grey Dodge Dakota pickup as driving erratically. *Smith*, 638 N.E.2d 1354. The truck drivers also provided dispatch with the location of the vehicle, the vehicle's direction, and the vehicle's license plate number. *Id.* In addition, an off-duty police officer witnessed the erratic driving and notified the investigating officer that he was following the vehicle in question. *Id.* Based upon this information, and without personally observing any traffic violations, the investigating officer stopped the vehicle and conducted an investigatory stop. *Id.* This court concluded that the information provided by the various truck drivers and the off-duty police officer was sufficient to give the investigating officer reasonable suspicion to stop Smith's vehicle. *Id.* at 1356.

In *Springmier*, a concerned citizen contacted the police regarding a driver who was driving erratically. *Springmier*, 559 N.E.2d at 320-21. The concerned citizen provided the police with the location of the vehicle, a description of the vehicle, and the vehicle's direction of travel. *Id.* On appeal, this court concluded that the specific and articulable facts provided to dispatch by the concerned citizen were sufficient to provide the officer with reasonable suspicion to stop Springmier's vehicle. *Id.* at. 321.

Here, prior to the stop, two unrelated identified concerned citizens contacted 911 to

6

report that a blue, grey, or silver Honda Accord was "traveling all over the roadway" near the 134-mile marker of southbound I-69. Supp. Hr. Tr. p. 5. Both concerned citizens provided dispatch with a description of the vehicle, its location, and its direction of travel. Sergeant Keesler, who was positioned near the 129-southbound exit ramp, observed a Honda Accord matching the description given by dispatch exit the interstate. The vehicle was traveling "pretty fast" and "abruptly stopped because there was a vehicle settin' at the intersection at the red light." Supp. Hr. Tr. p. 7. Once the light turned green, the vehicle that was stopped in front of the Honda Accord proceeded through the intersection. The Honda Accord, however, "sat there for awhile, up until a yellow light. And then decided to turn right." Supp. Hr. Tr. p. 7. As the Honda Accord turned right, the vehicle crossed the yellow line. Based on the information received from dispatch and his observations, Sergeant Keesler activated his emergency lights and initiated a traffic stop.

In light of the Indiana Supreme Court's decision in *Renzulli* and this court's conclusions in *Smith* and *Springmier*, we conclude that the information provided by the two unrelated concerned citizens plus Sergeant Keesler's observations of the vehicle in question were sufficient to provide Sergeant Keesler with reasonable suspicion to stop Maurer's vehicle. As such, we conclude that the trial court acted within its discretion in denying Maurer's motion to suppress. *See Meredith*, 906 N.E.2d at 869.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.

7